# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                   No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL SANCHEZ,
a.k.a. "Dan Dan," GERALD ARCHULETA,
a.k.a. "Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ;
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on Defendants Joe Gallegos, Edward Troup,

Billy Garcia, Chris Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel

Sanchez, Christopher Garcia, Carlos Herrera, and Rudy Perez' Opposed Motion for Designation of Evidence by the Government Pursuant to Rule 12(b)(4)(B), filed October 2, 2017 (Doc. 1281)("Motion"); (ii) the Notice of Joinder by Andrew Gallegos Pursuant to Rule 16, filed October 5, 2017 (Doc. 1288); (iii) Defendant Conrad Villegas' Notice of Joinder in Co-Defendant's Opposed Motion for Designation of Evidence by the Government Pursuant to Rule 12(b)(4)(B) (Doc. 1281) and Defendant Rudy Perez's Motion for Production of Alleged Co-Conspirator Statements and for Pre-Trial Hearing on their Admissibility (Doc. 1228), filed October 6, 2017 (Doc. 1293); (iv) the Notice of Joinder by Allen Patterson Pursuant to Rule 16, filed October 13, 2017 (Doc. 1311); (v) Defendant Anthony Ray Baca's Notice of Joinder, filed November 1, 2017 (Doc. 1390); and (vi) Defendant Shauna Gutierrez' Notice of Joinder, filed November 6, 2017 (Doc. 1407). The Court held a hearing on November 9, 2017. The primary issue is whether the Court should order the United States to designate all evidence that it intends to use in its case-in-chief and rebuttal. The Court concludes that the United States must inform C. Garcia whether it intends to use in its case-in-chief evidence that C. Garcia would otherwise move to suppress, but the United States does not need to designate evidence it intends to use in rebuttal. Accordingly, the Motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

The Court takes its background facts from the Second Superseding Indictment, filed March 9, 2017 (Doc. 947)("Superseding Indictment"). The background facts are largely unchanged from those facts that the Court provided in its Memorandum Opinion and Order, 323 F.R.D. 672, filed December 18, 2017 (Doc. 1585). The Court does not set forth these facts as findings or the truth. The Court recognizes that the factual background largely reflects the United States' version of events.

This case deals with crimes that the Syndicato de Nuevo Mexico ("SNM") allegedly committed through its members. Superseding Indictment at 2. SNM, through its members, operated in the District of New Mexico at all relevant times, and its members engaged in acts of violence and other criminal activities, "including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking." Superseding Indictment at 2. SNM constitutes an enterprise "as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce." Superseding Indictment at 2-3.

SNM is a prison gang that formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates assaulted and raped twelve correctional officers after taking them hostage. Superseding Indictment at 3. During the riot, thirty-three inmates were killed, and over 200 inmates were injured. See Superseding Indictment at 3. After the PNM riot, SNM expanded throughout the state's prison system and has had as many as 500 members. See Superseding Indictment at 3. SNM now has approximately 250 members, including "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." Superseding Indictment at 3. SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders to members outside the prison system. See Superseding Indictment at 3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals: primarily the control and profit of narcotics trafficking. See Superseding Indictment at 3-4. Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, [] includ[ing] murder and assaults." Superseding Indictment at 4. SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its power. See Superseding Indictment at 4. If another gang does not follow

SNM's demands, SNM will assault or kill one of the other gang's members to show its power. See Superseding Indictment at 4. SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system. See Superseding Indictment at 4. SNM engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Superseding Indictment at 4. To show its strength and influence, SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders. See Superseding Indictment at 5. To achieve its purpose of preserving its power, SNM uses intimidation, violence, threats of violence, assaults, and murder. See Superseding Indictment at 7. SNM generates income by having its members and associates traffic drugs and extort narcotic traffickers. See Superseding Indictment at 8. SNM members' recent conspiracy to murder high-ranking New Mexico Corrections Department ("NM Corrections Department") Officials motivated the Federal Bureau of Investigation's ("FBI") present investigation. See United States v. Garcia, 221 F. Supp. 3d 1275, 1277 (D.N.M. 2016)(Browning, J.).

In March, 2014, a Doña Ana County, New Mexico, grand jury indicted Defendants Jerry Montoya and Jerry Armenta on charges of first-degree murder and four other felonies related to the death of Javier Enrique Molina. See Memorandum Opinion and Order at 6, 2016 WL 7242579, at *3, filed October 28, 2016 (Doc. 753)("MOO"). Molina was J. Montoya and Armenta's fellow inmate during their incarceration at the Southern New Mexico Correctional Facility ("Southern New Mexico"). See MOO at 6, 2016 WL 7242579, at *3. The New Mexico Third Judicial District Attorney's Office accused J. Montoya and Armenta of fatally stabbing Molina with a shank in a gang-related attack. See MOO at 6, 2016 WL 7242579, at *3. That New Mexico indictment

charged J. Montoya and Armenta with: (i) Molina's murder; (ii) possessing a deadly weapon; (iii) tampering with evidence; and (iv) two counts of conspiracy. See MOO at 6-7, 2016 WL 7242579, at *3. In November, 2015, the state District Attorney dismissed the charges against J. Montoya and Armenta -- as well as separate charges against their alleged accomplice, Defendant Mario Rodriguez, who had been charged with possession of a deadly weapon by a prisoner, tampering, and conspiracy. See MOO at 7, 2016 WL 7242579, at *3. "A spokesperson for the District Attorney's Office indicated the charges were dismissed because the cases were going to be prosecuted at the federal court level." MOO at 7, 2016 WL 7242579, at *3.

The United States now brings this case, which it initiated in Las Cruces, New Mexico, against thirty-one Defendants, charging them with a total of sixteen counts. See Superseding Indictment at 1, 9-18. All Defendants are accused of participating in the SNM enterprise's operation and management, and of committing unlawful activities "as a consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from SNM and for the purpose of gaining entrance to and maintaining and increasing position in SNM, an enterprise engaged in racketeering activity." Superseding Indictment at 9-18. Defendant Arturo Arnulfo Garcia, Defendant Gerald Archuleta,[1] Defendant Benjamin Clark, M. Rodriguez,

---

[1]Archuleta pled guilty on June 16, 2016, stipulating:

In 1990, while incarcerated at the Penitentiary of New Mexico, I became a member of the Syndicato Nuevo Mexico (SNM) prison gang. The SNM is an ongoing criminal organization whose members, prospects and associates engage in acts of violence and other criminal activities, including murder, kidnapping, attempted murder, and conspiracy to manufacture / distribute narcotics. The SNM operates in the District of New Mexico and elsewhere. The SNM constitutes an enterprise (individuals associated in fact that engaged in, or the activities of which, affected interstate commerce) that is engaged in racketeering activity.

In 2003, I was an active member of the SNM. The person listed as J.R. in

Defendant Anthony Ray Baca, Defendant Robert Martinez, Defendant Roy Paul Martinez,[2] and

Count 8 of the Superseding Indictment was also a member of the SNM, and we were both engaged in racketeering activities for the SNM. J.R. and I had a falling out in 2003 and as a result, I put a "green-light" on J. R. Based upon my status in the SNM, this "green-light" was well known to members of the SNM. The "green-light" resulted in other members of the SNM shooting J.R. in 2003; however, J.R. survived the shooting. The "green-light" remained in effect in 2015; consequently, another member or associate of the SNM acted on the "hit," and J.R. was assaulted while incarcerated at the Southern New Mexico Correctional Facility in Dona Ana County, New Mexico. This attack and "hit" had been approved of by leaders of the SNM gang, including Anthony Ray Baca. As leader of the SNM gang in 2015, Baca was aware of the outstanding "green-light" and sanctioned it.

Thus, from 2003 to July, 2015, I conspired with members and associates of the SNM gang to commit assault resulting in serious bodily injury to J.R. This conspiracy was for the purpose of maintaining and increasing my position in the SNM, as well as the other people who were involved with the assault.

Plea Agreement at 4-5, filed June 16, 2016 (Doc. 586).

[2]R.P. Martinez plead guilty on September 15, 2016, stipulating:

In 1995, while incarcerated at the Penitentiary of New Mexico, I became a member of the Syndicato Nuevo Mexico (SNM) prison gang. The SNM is an ongoing criminal organization whose members, prospects and associates engage in acts of violence and other criminal activities, including murder, kidnapping, attempted murder, and conspiracy to manufacture / distribute narcotics. The SNM operates in the District of New Mexico and elsewhere. The SNM constitutes an enterprise (individuals associated in fact that engaged in, or the activities of which, affected interstate commerce) that is engaged in racketeering activity.

In 2013, I was an active member of the SNM. On or before 2013, I conspired with Robert Martinez, a.k.a. "Baby Rob," Anthony Baca, a.k.a. "Pup," and others to murder G.M. and D.S. Specifically, Anthony Baca was angry at the New Mexico Corrections Department (NMCD) for moving him out of State. Baca, as the purported leader of the SNM at the time, ordered the murders of G.M. and D.S. As a result, in 2015, I agreed to write letters to SNM gang members ordering the murders and in fact, did write letters ordering the members to kill G.M. and D.S. I did this by virtue of my membership in the SNM and to maintain and increase my position in the SNM.

Thus, from 2013 to continuing into 2015, I conspired with members of the SNM gang to murder G.M and D.S.

D. Sanchez are the enterprise's alleged leaders. <u>See</u> Superseding Indictment at 6. The other Defendants are allegedly members or associates who acted under the direction of the enterprise's leaders. <u>See</u> Superseding Indictment at 6. The SNM gang enterprise, through its members and associates, allegedly engaged in: (i) racketeering activity as 18 U.S.C. §§ 1959(b)(1) and 1961(1) define that term; (ii) murder and robbery in violation of New Mexico law; (iii) acts, indictable under 18 U.S.C. §§ 1503, 1512, and 1513, "involving obstruction of justice, tampering with or retaliating against a witness, victim, or an informant"; and (iv) offenses involving trafficking in narcotics in violation of 21 U.S.C. §§ 841 and 846. Superseding Indictment at 9.

Specifically, the Superseding Indictment alleges that, on March 26, 2001, Defendants Angel DeLeon, Joe Gallegos, Edward Troup, Leonard Lujan, and Billy Garcia murdered "F.C." Superseding Indictment at 9 (Count 1). On the same day, Lujan, B. Garcia, and Defendants Eugene Martinez, Allen Patterson, and Christopher Chavez allegedly murdered "R.G." Superseding Indictment at 10 (Count 2). On June 17, 2007, Defendant Javier Alonso, Troup, A.A. Garcia, Clark, and Defendant Ruben Hernandez allegedly murdered "F.S." Superseding Indictment at 10-11 (Count 3). On November 12, 2012, J. Gallegos and Defendant Andrew Gallegos allegedly conspired to murder "A.B." Superseding Indictment at 11 (Count 4). On the same day, J. Gallegos and A. Gallegos allegedly murdered A.B. <u>See</u> Superseding Indictment at 11-12 (Count 5). In March 2014, Armenta, Montoya, M. Rodriguez, Defendant Timothy Martinez, Baca, Defendant Mauricio Varela, D. Sanchez, Defendant Carlos Herrera, and Defendant Rudy Perez allegedly conspired to murder "J.M." Superseding Indictment at 12 (Count 6). On March 7, 2014, Armenta, Montoya, M. Rodriguez, T. Martinez, Baca, Varela, D. Sanchez, Herrera, and R. Perez allegedly

---

Plea Agreement at 4-5, filed September 15, 2016 (Doc. 686).

murdered J.M.  <u>See</u> Superseding Indictment at 13 (Count 7).

Further, starting in or around 2003 -- and until about July 13, 2015 -- Baca, Archuleta, and Defendant Conrad Villegas allegedly conspired to commit assault resulting in serious bodily injury to "J.R."  Superseding Indictment at 13-14 (Count 8).  Starting "on a date uncertain, but no later than 2013," and until the date of the Superseding Indictment -- April 21, 2014 -- Baca, R.P. Martinez, and R. Martinez allegedly conspired to murder "D.S."  Superseding Indictment at 14 (Count 9).  During the same time period, Baca, R.P. Martinez, R. Martinez, and Defendant Christopher Garcia allegedly conspired to murder "G.M."  Superseding Indictment at 15 (Count 10).  On November 29, 2015, C. Garcia, a convicted felon, allegedly unlawfully possessed a firearm.  <u>See</u> Superseding Indictment at 15-16 (Count 11).  On the same day, C. Garcia, a convicted felon, allegedly knowingly used and carried a firearm in relation to a conspiracy to murder charge.  <u>See</u> Superseding Indictment at 16 (Count 12).

On March 17, 2015, J. Gallegos allegedly committed assault with a dangerous weapon against "J.G."  Superseding Indictment at 16 (Count 13).  From February 1, 2016, until February 27, 2016, J. Gallegos and Defendants Santos Gonzales, Paul Rivera, Shauna Gutierrez, and Brandy Rodriguez allegedly conspired to murder "J.G."  Superseding Indictment at 17 (Count 14).  Also, on February 27, 2016, J. Gallegos, B. Rodriguez, Gonzales, Rivera, and Gutierrez allegedly attempted to murder J.G., and committed assault with a dangerous weapon and assault resulting in serious bodily injury to J.G.  <u>See</u> Superseding Indictment at 17-18 (Count 15).  The same Defendants also allegedly tampered with a witness, J.G.  <u>See</u> Superseding Indictment at 18 (Count 16).

For fuller factual context, there are four cases before the Court related to SNM's alleged criminal activity.  In a related case -- <u>United States v. Baca</u>, No. CR 16-1613, 2016 WL 6404772

(D.N.M. Oct. 20, 2016)(Browning, J.)[3] -- the United States names twelve defendants, all alleged

SNM members or associates, who have allegedly engaged in a racketeering conspiracy, under 18

U.S.C. § 1962(d).[4]  The United States is separately prosecuting C. Garcia for drug crimes, see

United States of America v. Garcia, No. CR 15-4275 (D.N.M.)(Browning, J.), and a four-

defendant prosecution for alleged violent crimes in aid of racketeering, under 18 U.S.C. § 1959,

see United States v. Varela, No. CR 15-4269 (D.N.M.)(Browning, J.).

## PROCEDURAL BACKGROUND

On December 1, 2015, a federal grand jury indicted twenty-four Defendants for the crimes

of Murder (under 18 U.S.C. § 1959(a)(1)); Principal to Murder (under 18 U.S.C. § 2); Conspiracy

to Murder (under 18 U.S.C. § 1959(a)(5)); and Conspiracy to Commit Assault Resulting in Serious

Bodily Injury (under 18 U.S.C. § 1959(a)(6)).  See Indictment at 1, filed December 1, 2015

---

[3]The Court granted a conditional severance to one Defendant in that case.  See United States v. Baca, 2016 WL 6404772 at *30-32.  The Court severed Defendant Richard Gallegos, because R. Gallegos -- unlike his co-Defendants -- asserted his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-74.  The Court concluded that, given R. Gallegos' assertion of those rights, there was sufficient prejudice to warrant a conditional severance of R. Gallegos from the joint-trial grouping.  Further, the Court was convinced that R. Gallegos was in a wholly unique position, distinct from his co-Defendants, because:

> Gallegos is ready for trial, because his counsel prepared his state court defense and he "[is] basically being tried for the same thing here. . . ." in federal court. . . .  If the Court does not sever, Gallegos will have to wait for discovery to be complete as to all Defendants, pre-trial motions as to all Defendants, and then, ultimately, the trial against him and all eleven of his co-Defendants.

United States v. Baca, 2016 WL 6404772, at *30-32.  Ultimately, it was clearly the speedy trial concerns which tipped the scale of prejudice in R. Gallegos' favor.  See 2016 WL 6404772, at *32 (setting a new trial date to ensure his speedy trial rights were secured).  On March 22, 2017, R. Gallegos pled guilty in his severed case.  See United States v. Gallegos, No. CR 16-4299, Plea Agreement at 1, filed March 22, 2017 (Doc. 24).

[4]The Court has also declared that case complex under the Speedy Trial Act.  See United States v. Baca, 2016 WL 6404772, at *32-33.

(Doc. 1)("Indictment"). The Defendants were all allegedly members, prospects, or otherwise associated with SNM, which constitutes an enterprise as 18 U.S.C § 1959(b)(2) defines that term. <u>See</u> Indictment at 2.

On April 21, 2016, a grand jury, by the Superseding Indictment, indicted thirty Defendants -- twenty-four of whom were Defendants in the original Indictment. See Superseding Indictment at 1. In addition to the new Defendants, the Superseding Indictment also contains new charges under modified count numbers. <u>See</u> Superseding Indictment at 9-18. The Superseding Indictment contains sixteen counts for: (i) the Murder of F.C. ("Count 1"); (ii) the Murder of R.G. ("Count 2"); (iii) the Murder of F.S. ("Count 3"); (iv) Conspiracy to Murder A.B. ("Count 4"); (v) the Murder of A.B. ("Count 5"); (vi) Conspiracy to Murder J.M. ("Count 6"); (vii) the Murder of J.M. ("Count 7"); (viii) Conspiracy to Commit Assault Resulting in Serious Bodily Injury to J.R. ("Count 8"); (ix) Conspiracy to Murder D.S. ("Count 9"); (x) Conspiracy to Murder G.M. ("Count 10"); (xi) Felon in Possession of a Firearm ("Count 11"); (xii) Using and Carrying a Firearm During and in Relation to a Crime of Violence ("Count 12"); (xiii) Assault with Dangerous Weapon of J.G. ("Count 13"); (xiv) Conspiracy to Murder J.G. ("Count 14"); (xv) Attempted Murder of J.G., Assault with a Dangerous Weapon Upon J.G., Resulting in Serious Bodily Injury to J.G. ("Count 15"); and (xvi) Tampering with a Witness, Victim or Informant by Physical Force or Threat ("Count 16"). Superseding Indictment at 9-18. At the time of the Superseding Indictment's filing, some of the Defendants were death-penalty eligible. <u>See</u> The United States' Notice of Intent Not To Seek a Sentence of Death, filed June 6, 2016 (Doc. 567)(stating that it would not seek a death sentence against twenty-one Defendants). The Honorable Ken Gonzales, United States District Judge for the District of New Mexico, initially presided over the case until it was reassigned to the Court on March 30, 2016. <u>See</u> Judge Update, filed December 1, 2015, and

Notice of Case Reassignment, filed March 30, 2016 (Doc. 351). Given the large number of Defendants and the safety concerns at issue in these cases, Judge Gonzales initially entered a Protective Order regulating discovery, and the Defendants received discovery on tablets managed by a coordinated discovery management firm. See Protective Order, filed June 16, 2016 (Doc. 589)("Protective Order").

On October 4, 2016, in a pretrial hearing, the Court outlined its general approach regarding discovery in this case. See Transcript of Hearing (held October 4, 2016), filed October 18, 2016 (Doc. 743)("Oct. 2016 Tr."). The United States agreed to produce material under the Jencks Act, 18 U.S.C. § 3500, fourteen days before trial, see Oct. 2016 Tr. at 19:2-12 (Beck), even though the Jencks Act does not require the United States to produce a witness' statements until after the witness testifies, and the Court indicated that it was "not going to require any Jencks material to be produced before the 14 days," Oct. 2016 Tr. at 23:10-12 (Court). On the other hand, the Court indicated that the United States "needs to go in and look at these files and do a Brady review," and "produce the Brady material promptly, immediately." Oct. 2016 Tr. at 23:16-19 (Court). The Court later memorialized its discovery determinations in its Sealed Memorandum Opinion and Order at 106-11, 2017 WL 2271430, at *50-52, filed January 3, 2017 (Doc. 809).

1.     **The Motion.**

On October 2, 2017, C. Garcia filed the Motion, requesting that the Court order the United States to designate the specific evidence that it intends to use at trial pursuant rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure. See Motion at 5. C. Garcia argues that ordering the United States to designate evidence will "save the parties time and resources from needlessly litigating unnecessary motions to suppress evidence the government does not intend to use in its case-in-chief." Motion at 6 (citing United States v. Lujan, 530 F. Supp. 2d 1224, 1246 (D.N.M.

2008)(Brack, J.)).  Moreover, C. Garcia asks the Court "to order the government to designate any evidence disclosed under Rule 16 that may arguably be subject to challenge or suppression." Motion at 6 (citing United States v. Lujan, 530 F. Supp. 2d at 1244).  C. Garcia argues that, "[i]f a proper argument can be made [to challenge or suppress evidence], counsel should be entitled to the opportunity to make it."  Motion at 7.

According to C. Garcia, the United States "has not satisfied its Rule 12(b)(4) obligations." Motion at 7.  C. Garcia contends that the "amount of discovery in this case is too voluminous . . . for the government to claim it has met its duty to [provide] notice to defendants by merely disclosing evidence to the defense."  Motion at 7.  C. Garcia argues that, without knowing the evidence that the United States intends to use, the Defendants will "have to unknowingly file unnecessary motions to suppress," which will "wast[e] judicial resources on evidence the government does not intend to use."  Motion at 8.  C. Garcia notes that rule 12(4)(B) refers only to evidence which the United States intends to use in its case-in-chief, but he also requests evidence the United States intends to use in rebuttals and argues that "federal courts have the inherent authority to require the government to give notice of such evidence that the government intends to use in rebuttal or otherwise."  Motion at 9 (citing United States v. Anderson, 416 F. Supp. 2d 110, 110 (D.D.C. 2006)(Friedman, J.)).  Furthermore, C. Garcia asks "that the Court order the government to designate the material with specificity so that [the Defendants] may easily identify the material."  Motion at 9 (citing United States v. Ishak, 277 F.R.D. 156, 159-60 (E.D. Va. 2011)(Ellis, J.)).  C. Garcia requests that the United States provide the Defendants "a good faith estimate of pieces of evidence that, if identified with specificity, would disclose the government's trial strategy."  Motion at 9 (citing United States v. Jacobs, 650 F. Supp. 2d 160, 172 (D. Conn. 2009)(Haight, J.)).

2.      **The Response**.

The United States responded to the Motion on October 16, 2017.  See United States'
Response in Opposition to Defendant's Motion for Designation of Evidence by the Government
Pursuant to Rule 12(b)(4)(B) (Doc. 1281), filed October 16, 2017 (Doc. 1334)("Response").  The
United States argues that rule 12(b)(4)(B) "only pertains to the evidence the government would
seek to use in its case-in-chief," and thus opposes C. Garcia's request for evidence that the United
States plans to use in its rebuttals.  Response at 1.  The United States argues that this "expansion"
of rule 12(b)(4)(B) is a "clear misreading and abuse of the rule."  Response at 1-2.  The United
States asserts that "the purpose of the rule [is] not to reveal the government's trial strategy, but
merely to provide the defendant with sufficient information to file necessary suppression motions."
Response at 2 (citing United States v. Lujan, 530 F. Supp. 2d at 1246).  The United States notes
that, in United States v. Lujan, the Honorable Robert C. Brack, United States District Judge for
the District of New Mexico, "explicitly rejected the defense's demand for notice of the evidence
that the government planned to use in rebuttal."  Response at 2 (citing United States v. Lujan, 530
F. Supp. 2d at 1246).  Furthermore, the United States notes that, in United States v. McCluskey,
No. CR 10-2734 JCH, 2012 WL 13076959 (D.N.M. May 11, 2012)(Herrera, J.), the Honorable
Judith C. Herrera, United States District Judge for the District of New Mexico, required the United
States to provide notice of only the evidence it did not plan on using in its case-in-chief.  See
Response at 3 (citing United States v. McCluskey, 2012 WL 13076959, at *13-14).  The United
States also notes that, in United States v. Moya, No. CR 15-1889 JCH, 2016 WL 9777212 (D.N.M.
Sept. 29, 2016)(Herrera, J.), Judge Herrera similarly held that the "purpose of rule 12(b)(4)(B) [is]
'to provide the Defendant with sufficient information to enable him to file only germane motions

to suppress, but is not intended to provide access to the Government's trial strategy.'" Response at 3 (citing <u>United States v. Moya</u>, 2016 WL 9777212, at *2).

The United States urges the Court to deny the Motion and thus not order the United States to designate the evidence that it intends to use in rebuttals. <u>See</u> Response at 3. The United States argues that "[t]rial preparation . . . is an ongoing and ever-shifting process." Response at 3. Additionally, the United States maintains that the "physical evidence, witnesses, and exhibits [that] will be used at trial [are] in constant flux and simply cannot be determined with absolute specificity weeks or months before the actual trial date." Response at 3. Moreover, the United States argues that rule 12(b)(4)(B) is "meant to aid pretrial planning and motions practice, and [does] not convey any sort of substantive right." Response at 3 (citing <u>United States v. El-Silimy</u>, 228 F.R.D. 52, 56-57 (D. Me. 2005)(Cohen, J.).

**3.** **<u>The Reply</u>.**

C. Garcia replied to the United States' Response on October 30, 2017. <u>See</u> Reply to United States' Response in Opposition to Defendant's Motion for Designation of Evidence by the Government Pursuant to Rule 12(b)(4)(B) (Doc. 1281), filed October 30, 2017 (Doc. 1388)("Reply"). C. Garcia notes that the United States focused only on his request for an order requiring the United States "to designate evidence it reasonably plans to offer in its *rebuttal*." Reply at 2 (emphasis in original). According to C. Garcia, "[o]rdering the government to designate such evidence is within the Court's inherent authority." Reply at 2 (citing <u>United States v. Anderson</u>, 416 F. Supp. 2d at 110; <u>United States v. Lujan</u>, 530 F. Supp. 2d at 1247). C. Garcia asserts that his request "was not intended to reveal the government's trial strategy 'but merely to provide the defendant with sufficient information to file the necessary suppression motions.'" Reply at 3 (quoting <u>United States v. Lujan</u>, 530 F. Supp. 2d at 1246).

C. Garcia notes that the United States argues for a "moderate strategy" in which the United States would designate only evidence that it does not plan to introduce in its case-in-chief. Reply at 3. C. Garcia argues that the Court should require the United States to designate evidence it intends to use in its case-in-chief for two reasons: (i) "the copious discovery that has already been disclosed under Rule 16 will not allow the defendants to effectively challenge or move for its suppression"; and (ii) the United States "has yet to satisfy its disclosure obligations under Rule 16." Reply at 4. According to C. Garcia, "[s]hould the government only be required to designate evidence it does not intend to use, the defendants will still be in a position of having to guess as to what evidence may require a motion to suppress." Reply at 4. Moreover, C. Garcia argues that, if the United States does not designate the evidence that it intends to use, then "the integrity of an already anticipated complex trial may be comprised [sic] because defendants will be forced to interrupt proceedings by filling [sic] motions [to] suppress when government introduces evidence requiring challenge." Reply at 5 (citing United States v. de la Cruz-Paulino, 61 F.3d 896, 993 (1st Cir. 1995); United States v. Yonis Muhudin Ishak, 277 F.R.D. at 159-60). C. Garcia argues that, given how long the case has been in litigation, the United States "likely has some knowledge of evidence it disclosed under Rule 16 that it intends to use in its case-in-chief." Reply at 5. C. Garcia adds that, "as a means for correction for [his Motion]," the Defendants ask that the United States provide a "good faith estimate [] of evidence that [it] intends to use at trial, and if identified with specificity, it would not disclose the government's trial strategy." Reply at 5 (citing United States v. Jacobs, 650 F. Supp. 2d at 172).

4.      **The Hearing.**

The Court held a hearing on the Motion on November 9, 2017. See Transcript of Motion Proceedings on November 9, 2017 at 1 (taken November 9, 2017), filed November 20, 2017

(Doc. 1457)("Tr."). C. Garcia argued that the Motion will make the case move "more smoothly," because the Defendants can file motions to suppress without delay. Tr. at 134:5 (Sirignano). C. Garcia said that the Defendants were not trying to learn the United States' strategy. See Tr. at 134:10-15 (Sirignano). C. Garcia asserted that, in its Response, the United States was "more interested in the rebuttal witnesses or the rebuttal evidence," which C. Garcia admitted he is less "concerned about . . . right now." Tr. at 134:19-25 (Sirignano). C. Garcia stated that, "[i]f we could just get the evidence that the Government plans on using in its case-in-chief and start there, then we could get these motions to suppress filed promptly." Tr. at 134:25-135:3 (Sirignano). C. Garcia noted that "just about everybody in this case" joins the Motion. Tr. at 135:13-14 (Sirignano).

The United States argued that, to its knowledge, no judges in the District of New Mexico have granted a motion like C. Garcia's Motion. See Tr. at 136:1-2 (Castellano). The Court admitted that it is not very familiar with rule 12(b)(4)(B), and it asked the United States to explain the rule's intended purpose and when a defendant can invoke the rule. See Tr. at 136:9-14 (Court). The United States responded that the "rule is designed to allow the defense enough information to file motions to suppress." Tr. at 136:19-21 (Castellano). The Court asked, "How do . . . we go about telling [C. Garcia] what evidence to do that with?" Tr. at 137:12-14 (Court). The United States responded that C. Garcia already has the United States' evidence and already is planning to file motions to suppress. See Tr. at 137:15-21 (Castellano). The Court stated that rule 12(b)(4)(B) "says 'Request notice of the Government's intent to use.' So it's not that [C. Garcia] has to have possession of it. . . . [He] has a right to ask you to tell [him] what you're going to use so [he] can file a motion to suppress." Tr. at 137:23-138:4 (Court)(quoting Fed. R. Crim. P. 12(b)(4)(B)). The United States responded that Judge Herrera had interpreted the rule and ordered the United States

to tell the defense "what it did not intend to use in its case-in-chief." Tr. at 138:10-11 (Castellano). The United States argued that such a ruling tells the Defendants that "this [evidence] is something you don't need to worry about, so you don't need to file a motion." Tr. at 138:22-24 (Castellano). The United States added that, "because of the [Violent Crimes in Aid of Racketeering Act ("VICAR")] elements and because of how expansive the VICAR statute is," the United States is not aware of any evidence that it intends not to use at trial. Tr. at 140:7-9 (Castellano). Last, the United States said that it does not "think any court has granted what [the Defendants are] requesting, which is basically a list of what we intend to show, which, in essence, would show our trial strategy in some ways." Tr. at 140:18-21 (Castellano).

C. Garcia stated that he does not "want to know what [the United States is] not going to use, because then that would require [the Defendants] to go back and look at all of the evidence that's already been produced." Tr. at 141:17-20 (Sirignano). C. Garcia noted that, as of September 28, 2017, the United States had produced 2,824 documents, 4,939 audio files, and 38,963 .jpg files, and that he anticipated there would be additional discovery materials. See Tr. at 141:22-142:1 (Sirignano). The Court noted that the United States has stated that it intends to use "everything" at trial. Tr. at 143:1 (Court). C. Garcia responded that he wants the United States to designate "specifically" the evidence it intends to use at trial. Tr. at 143:3 (Sirignano). C. Garcia argued that, because there are thousands of telephone calls, "we're going to be here for more than two months in the first wave of trial, if they're going to use every single phone call." Tr. at 143:13-16 (Sirignano). The Court responded that it had contemplated the first trial lasting about six weeks, which is close to two months. See Tr. at 143:17-19 (Court). C. Garcia reiterated that rule 12(b)(4)(B) "contemplates that [the United States] identify what [it is] planning on using

in [its] case-in-chief, so [that the Defendants] can timely make motions."  Tr. at 144:10-12 (Sirignano).

Troup argued that several United States district judges for the District of Colorado have granted similar motions.  See Tr. at 145:15-17 (Burke).  According to Troup, one case was "fairly complicated," because there were "tens of thousands of pages of discovery, . . . 20 defendants, tens of thousands of pages.  And the motions were granted."  Tr. at 145:18-24 (Burke).  Troup admitted, however, that the request creates "make-work" for the United States.  Tr. at 145:25 (Burke).  Troup asserted that, in other cases, the judges had made their orders "nonbinding," allowing the United States to use evidence that it had not originally said it would use at trial.  Tr. at 146:16 (Burke). Troup argued that such an order "may narrow the issues."  Tr. at 146:25 (Burke).

The United States asserted that the Defendants requested hundreds of hours of telephone calls "going back years" and that the Motion "would require the [United States] to do the work for them, and sort through every single phone call to decide what we may or may not use."  Tr. at 148:8-11 (Castellano).  According to the United States, the Defendants continue to ask for discovery and "then they complain there is too much discovery."  Tr. at 148:13-14 (Castellano). The United States also argued that "other judges have already ruled that the intent of the rule is really not to have us introduce or make a list for them, or spell it out for them or give them our trial strategy.  It is so they can file motions."  Tr. at 149:4-8 (Castellano).

C. Garcia then argued that the United States "charged this case" and that he was unsure "why it was charged this way."  Tr. at 150:9-10 (Sirignano).  C. Garcia noted that he is not complaining about there being too much discovery, but that he is complaining about the "timeliness" of discovery.  Tr. at 150:15 (Sirignano).  C. Garcia stressed that rule 12(b)(4)(B)

> requires, at the defendant's request, "at the arraignment or soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence, under Rule 12(b)(3)(C), request notice of the Government's intent to use in its evidence in its case-in-chief at trial, evidence that the defendant may be entitled to discovery under Rule 16."

Tr. at 151:1-8 (Sirignano)(quoting Fed. R. Crim. P. 12(b)(4)(B)).  In addition, C. Garcia stated that he liked Troup's proposal to require the United States to designate with specificity the evidence that it intends to use at the first trial and to "allow [the United States] some wiggle room."  Tr. at 151:23 (Sirignano).  C. Garcia argued that "[t]his is stuff they know.  They just have to write it down."  Tr. at 151:3 (Sirignano).  The Court asked C. Garcia: "[I]f I were to do nothing, right at this moment, how many motions to suppress . . . would [you] file?"  Tr. at 152:18-21 (Court).  C. Garcia responded: "I would probably venture to guess four or five."  Tr. at 153:4-5 (Sirignano).

The United States quoted part of the commentary to the Federal Rules of Criminal Procedure:

> In the interests of better administration of criminal justice, we suggest that wherever practicable the prosecutor should within a reasonable time before trial notify the defendant as to whether any alleged confession or admission will be offered in evidence at trial.  We also suggest, in cases where such notice is given by the prosecution, that the defense, if it intends to attack the confession or administration as involuntary, notify the prosecutor of a desire by the defense for a special determination on such issue.

Tr. at 153:20-154:6 (Castellano)(quoting Fed. R. Crim. P. 12, 1974 Advisory Comm. note).  The United States then argued that the Defendants are expanding rule 12(b)(4)(B) "to let them know every part of our case that we intend to introduce at trial.  And that's just not contemplated by the rule."  Tr. at 154:23-25 (Castellano).  The United States also argued that asking it to "comb through thousands of calls" that the United States "didn't have to disclose . . . subverts the purpose of" rule 12(b)(4)(B).  Tr. at 156:9-15 (Beck).

C. Garcia asserted that the United States is "misconstruing" the Defendants' request. Tr. at 157:3 (Sirignano). C. Garcia maintained that he is not asking the United States to go through 9,000 calls that it has not produced, because the United States "know[s] what [it's] going to use against each defendant in this case." Tr. at 157:7-8 (Sirignano). C. Garcia reiterated that he is asking the United States to identify only the evidence that it intends to use at trial to avoid "a wild goose chase with motions to suppress." Tr. at 157:22 (Sirignano).

The Court stated that it is "a little skeptical" that the United States intends to use every piece of produced evidence. Tr. at 158:5 (Court). The Court opined that "[a]t some point the jury is going to fuse out on us" and predicted that the United States will "be trimming" down the evidence that it uses at trial. Tr. at 158:11-13 (Court). The Court also stated that it does not want to force the United States to "do a bunch of make-work at this stage." Tr. at 158:15-16 (Court). The Court proposed that C. Garcia send the United States a letter identifying the evidence that he intends to move to suppress, and then the United States can tell C. Garcia whether it intends to use the evidence before C. Garcia writes his motions to suppress. See Tr. at 159:7-160:22 (Court). The Court opined that its proposal would reduce the "work on both sides." Tr. at 160:12-13 (Court). C. Garcia stated that the Court's proposal is a "good alternative" and a "good compromise." Tr. at 161:4-5 (Sirignano). The United States also stated that it approved of the Court's proposal. See Tr. at 161:10-11 (Castellano).

The Court stated that its proposal would remove the United States' incentive to include superfluous evidence at trial simply because the United States said that it would use the evidence. See Tr. at 161:14-20 (Court). The United States said, however, that it may be incentivized to include additional evidence, because C. Garcia "hasn't necessarily abandoned the rebuttal argument." Tr. at 162:23-24 (Castellano). The Court clarified that its proposal only pertains to

the evidence in the United States' case-in-chief.  See Tr. at 162:11-16 (Court).  The Court asked

how rule 12(b)(4)(B) could entitle a defendant to rebuttal evidence.  See Tr. at 163:2-3 (Court).  C.

Garcia responded that United States v. Anderson, 416 F. Supp. 2d 110, held that requiring the

United States to designate rebuttal evidence is within the Court's inherent authority.  See Tr.

at 163:18-164:1 (Sirignano).

The Court ruled that the United States does not need to designate rebuttal evidence.  See

Tr. at 164:12-14 (Court)("[L]et's exclude rebuttal [evidence].  I'm not sure that's what the rule is

contemplating.").  The Court instructed, however, that C. Garcia may still ask the United States in

a letter whether it anticipates using specific evidence in rebuttal.  See Tr. at 165:22-166:5 (Court).

The Court added that it has a "pretty narrow view on rebuttal."  Tr. at 165:6-7 (Court).  The Court

stated that rebuttal evidence pertains to "things that are unanticipated. . . .  So if [the United States]

anticipate[s] it, that's not rebuttal."  Tr. at 165:16-18 (Court).  The United States and C. Garcia

then verified that they are satisfied with the Court's proposal.  See Tr. at 166:4-10 (Court,

Castellano, Sirignano).  The Court also verified that all of the joining Defendants are

"comfortable" with its proposed procedure and then instructed that "we'll apply [this procedure]

across the board."  Tr. at 168:15-16 (Court).  The United States noted, however, that it objected to

the Court's ruling and that it wanted to "preserve that for appeal."  Tr. at 168:21 (Castellano).

## LAW REGARDING FED. R. CRIM. P. 12(b)(4)(B)

Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedures states:

> (B) *At the Defendant's Request*.  At the arraignment or as soon afterward as
> practicable, the defendant may, in order to have an opportunity to move to suppress
> evidence under Rule 12(b)(3)(C), request notice of the government's intent to use
> (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to
> discover under Rule 16.

Fed. R. Crim. P. 12(b)(4)(B) (emphasis in original). "The rule provides a mechanism to insure that the defendant knows of the government's intention to use evidence to which the defendant may want to object." United States v. Lujan, 530 F. Supp. 1224. Moreover, the Advisory Committee notes state that, "[a]lthough the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12 makes it possible for him to avoid the necessity of moving to suppress evidence which the government does not intend to use." Fed. R. Crim. P. 12, 1974 Advisory Comm. note. The United States Court of Appeals for the First Circuit has held that rule 12(b) "was not designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial." United States v. de la Cruz-Paulino, 61 F.3d at 994.

The United States Court of Appeals for the Tenth Circuit has not analyzed rule 12(b)(4)(B). The few federal district courts that have analyzed rule 12(b)(4)(B) are divided over what rule 12(b)(4)(B) requires of the United States. Some district courts have held that the United States satisfies the rule by providing notice that it intends to use all or some of the evidence that it produced in discovery in its case-in-chief. See United States v. Kimble, 2007 WL 1430303, *2 (S.D. Ga. May 10, 2007)(Barfield, J.)(concluding that the United States' "open file" discovery policy, in which the United States produced all material evidence, satisfies rule 12(b)(4)(B)'s requirements); United States v. Jordan, 2007 WL 1849985, *3 (E.D. Tenn. June 25, 2007)(Guyton, J.)(concluding that the United States' "representation that any and all physical and documentary evidence applying to the Indictment has been forwarded to defense counsel" satisfies rule 12(b)(4)(B)); United States v. Cushmeer, 2007 WL 1858269, *2 (N.D. Ohio June 26, 2007)(Aldrich, J.)(concluding that the United States satisfied rule 12(b)(4)(B), because it "complied with its Rule 16 discovery obligations by making all evidence available for review").

Some district courts have taken a more expansive approach by holding that the United States must do more than simply make all evidence produced in discovery available for review; instead, the United States must specify the particular items of evidence it intends to use at trial. <u>See</u> <u>United States v. Anderson</u>, 416 F. Supp. 2d at 112 (concluding that the United States "must notify defendant of the evidence that it intends to use in its case-in-chief -- that is, the evidence that will appear on the government's exhibit list for trial" to satisfy rule 12(b)(4)(B)); <u>United States v. Cheatham</u>, 500 F. Supp. 2d 528, 535-36 (W.D. Pa. 2007)(Gibson, J)(concluding that the United States' "open file policy . . . does not comply with Rule 12(b)(4)(B) because it does not specify which evidence the government intends to use at trial" (internal citations and quotation marks omitted)).

In <u>United States v. Lujan</u>, Judge Brack took a "middle ground" approach to the defendants' rule 12(b)(4)(B) motion and ordered the United States to notify the defendants of all evidence that it knew it did not intend to introduce at trial. <u>United States v. Lujan</u>, 530 F. Supp. 2d at 1245. Judge Brack reasoned:

> Rule 12 was designed to make it possible for the defense to avoid the necessity of moving to suppress evidence that the government does not intend to use. *See* Fed. R. Crim. P. 12, advisory committee notes, 1974 amendment; [*United States v. de la*] *Cruz-Paulino*, 61 F.3d at 993. On the other hand, interpreting Rule 12(b)(4)(B) as requiring the government to file an exhibit list, as essentially requested by Defendants, expands the rule too far. Had the rule contemplated a detailed exhibit list, it could have stated so expressly. The purpose of the rule is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions. [*United States v. de la*] *Cruz-Paulino*, 61 F.3d at 994.

<u>United States v. Lujan</u>, 530 F. Supp. 2d at 1246. In <u>United States v. McCluskey</u>, Judge Herrera adopted the same "moderate approach." 2012 WL 13076959, *2. <u>See</u> <u>id.</u> (concluding that the

United States must "notify Defendant of any Rule 16 evidence it does *not* intend to introduce in its evidence-in-chief at trial" (emphasis in original)).

Judge Brack denied, however, the defendants' request for notice of evidence that the United States intended to use in rebuttal. See United States v. Lujan, 530 F. Supp. 2d at 1246. Judge Brack reasoned that rule 12(b)(4)(B) "expressly limits the notice to evidence in the government's 'evidence-in-chief at trial.'" United States v. Lujan, 530 F. Supp. 2d at 1246 (quoting Fed. R. Crim. P. 12(b)(4)(B)). Judge Brack thus construed rule 12(b)(4)(B) as governing only the evidence which the United States intends to use in its case-in-chief. See United States v. Lujan, 530 F. Supp. 2d at 1247 (citing United States v. Anderson, 416 F. Supp. 2d at 112-13; United States v. Bridges, 2006 WL 3716653, *6 (E.D. Tenn. Dec. 14, 2006)(Guyton, J.)).

## LAW REGARDING REBUTTAL EVIDENCE

"When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005). "Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion." Tanberg v. Sholtis, 401 F.3d at 1166. This principle reflects the general proposition that "[c]ross examination may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness." United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998)(internal quotation marks omitted)(quoting United States v. Troutman, 814 F.2d 1428, 1450 (10th Cir. 1987)). "[W]hether or not rebuttal evidence is admissible depends on whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof." Richie v. Mullin, 417 F.3d 1117, 1138 (10th Cir. 2005)(internal quotation marks omitted)(alteration in original)(quoting Tanberg v. Sholtis, 401 F.3d at 1166). The Tenth Circuit

has recognized that, when the rebuttal evidence is "otherwise inadmissible," it must both: (i) "be reasonably tailored to the evidence it seeks to refute"; and (ii) "[t]here must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." Richie v. Mullin, 417 F.3d at 1138 (quoting United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001)). For instance, in a case where a wife was seeking damages for loss of companionship in the context of an excessive force claim, the Tenth Circuit stated that the wife's claim for damages opened the door to evidence of the deceased husband's prior domestic abuse conviction and arrest. See Lounds v. Torres, 217 F. App'x 755, 758, 2007 WL 495318, at *2 (10th Cir. 2007)(unpublished)("[E]vidence of Alford's 2002 conviction and 2003 arrest for domestic abuse of Ms. Fuston-Lounds was offered not to show his character, but for the proper purpose of rebutting Ms. Fuston-Lounds' claim for damages.").

## ANALYSIS

Rule 12(b)(4)(B) provides that the "defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B). C. Garcia argues that he is entitled to notice of the specific evidence that the United States intends to use at trial -- both in its case-in-chief and its rebuttal. See Motion at 5-9. On the other hand, the United States argues that rule 12(b)(4)(B) "only pertains to the evidence the government would seek to use in its case-in-chief." Response at 1. Moreover, the United States contends that providing notice of the evidence it does not intend to use in its case-in-chief, rather than evidence it intends to use, would satisfy rule 12(b)(4)(B). See Tr. at 138:22-24 (Castellano). Nevertheless, the United States posits that it intends to use all of its evidence at trial. See Tr. at 140:7-9 (Castellano).

The Court concludes that the United States satisfies rule 12(b)(4)(B) by stipulating that it currently intends to introduce all discovery evidence in its case-in-chief. Rule 12(b)(4)(B) states that "the defendant may . . . request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B). Rule 12(b)(4)(B) is limited in its scope. See United States v. Jordan, 2007 WL 1849985, *3; Fed. R. Crim. P. 12, 1974 Advisory Comm. note (stating that rule 12(d)(2), which was composed of what is currently rule 12(b)(4), "deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confession on the part of the defendant"). First, rule 12(b)(4)(B)'s text limits designation to only the evidence "that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B). The Court determines that the provision of rule 16 discovery evidence satisfies rule 12(b)(4)(B)' plain text. At the hearing, the United States said that it intends to use all of its evidence at trial. See Tr. at 140:7-9 (Castellano). Thus, the Court concludes that the United States satisfies rule 12(b)(4)(B).

Second, rule 12(b)(4)(B) limits the United States' designation obligations to the evidence that the defendant first identifies and "request[s] notice of the government's intent to use." Fed. R. Crim. P. 12(b)(4)(B). See Ishak v. United States, 277 F.R.D. at 159 ("This is the second limitation: In order to trigger a notice obligation, the defendant's request must identify potentially suppressive evidence with specificity."). At the hearing, the Court instructed C. Garcia and his co-Defendants that they may send the United States a letter identifying the specific evidence that they intend to move to suppress, and then the United States must inform the Defendants whether it still intends to use the evidence in its case-in-chief so that the Defendants may prepare motions to suppress if they so choose. See Tr. at 159:7-160:22 (Court). The United States and C. Garcia agreed that this procedure is satisfactory. See Tr. at 161:4-11 (Sirignano, Court, Castellano).

Moreover, this procedure comports with rule 12(b)(4)(B)'s requirements.  See United States v. Ishak, 277 F.R.D. at 159 ("What Rule 12(b)(4)(B) [] require[s] is that the government respond to a defendant's request for notice whether the government intends to offer specific evidence that the request identifies.").  Furthermore, the Advisory Committee notes provide the following guidance:

> In cases in which defendant wishes to know what types of evidence the government intends to use so that he can make his motion to suppress prior to trial, he can request the government to give notice of its intention to use specified evidence which the defendant is entitled to discover under rule 16.

Fed. R. Crim. P. 12, 1974 Advisory Comm. note (emphasis added).  Accordingly, after the Defendants specify evidence they intend to move to suppress, the United States must indicate whether it intends to use such evidence.  The rule does not explicitly require that the United States provide the Defendants with an exhibit list.  See United States v. Lujan, 530 F. Supp. 2d at 1246 ("Had the rule contemplated a detailed exhibit list, it could have stated so expressly.").  The rule requires no more than that the Defendants receive notice "of the government's intention to use evidence to which the defendant may want to object."  United States v. McCluskey, 2012 WL 13076959, at *1 (quoting United States v. Lujan, 530 F. Supp. 2d at 1244 (internal quotation marks omitted)).  Thus, if the Defendants specify evidence that they intend to suppress, the United States must indicate whether it still intends to introduce such evidence in its case-in-chief.  See Tr. at 159:7-160:22 (Court).

This procedure also aligns with rule 12(b)(4)(B)'s purpose.  Rule 12(b)(4)'s purpose "is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions."  United States v. Lujan, 530 F. Supp. 2d at 1246 (citing United States v. de la Cruz-Paulino, 61 F.3d at 994).  This procedure allows the Defendants to inquire whether the United States intends to use specific evidence in its case-in-

chief so that the Defendants can plan their motions to suppress accordingly. Moreover, this procedure spares the Defendants "the futile exercise of moving to suppress evidence the government will not introduce." United States v. McCluskey, 2012 WL 13076959, at *1. See Fed. R. Crim. P. 12, 1974 Advisory Comm. note (explaining that "rule 12 makes it possible for [the defendant] to avoid the necessity of moving to suppress evidence which the government does not intend to use"). The Court concludes that its proposed procedure is in accordance with rule 12(b)(4)(B)'s text and -- like the moderate approaches devised in Judge Brack's and Judge Herrera's cases -- supports the rule's purpose by enabling the Defendants to prepare motions to suppress without wasting time on motions to suppress evidence that the United States ultimately decides that it will not use.

The Court further concludes that the United States does not need to produce notice of evidence that it will use in its rebuttal. At the hearing, C. Garcia admitted that he is less "concerned about rebuttal evidence right now," Tr. at 134:19-25 (Sirignano), and therefore the Court "put[] rebuttal aside" for the time being, Tr. at 162:12 (Court). If the United States knows that it will present an item of evidence at trial, then it needs to introduce that evidence in its case-in-chief, and thus such evidence is subject to the Defendants' requests for notice. See Tr. at 165:11-16 (Court)("[T]he Government doesn't get another shot at putting in evidence after defendant puts on its case-in-chief. . . . You can't use [rebuttal] as another opportunity."). Moreover, rule 12(b)(4)(B) explicitly states that the United States must give notice of its intent to use evidence in its "evidence-in-chief at trial." Fed. R. Crim. P. 12(b)(4)(B). The rule makes no mention of giving notice of evidence that the United States intends to use in rebuttal. See United States v. Lujan, 530 F. Supp. 2d at 1246 ("Rule 12(b)(4)(B) expressly limits the notice to evidence in the

government's 'evidence-in-chief at trial.' (quoting Fed. R. Crim. P. 12(b)(4)(B))).  Accordingly, the Court grants the Motion in part and denies it in part.

**IT IS ORDERED** that Defendants Joe Gallegos, Edward Troup, Billy Garcia, Chris Chavez, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Christopher Garcia, Carlos Herrera, and Rudy Perez' Opposed Motion for Designation of Evidence by the Government Pursuant to Rule 12(b)(4)(B), filed October 2, 2017 (Doc. 1281), is granted in part and denied in part; (ii) the requests in the Notice of Joinder by Andrew Gallegos Pursuant to Rule 16, filed October 5, 2017 (Doc. 1288), are granted in part and denied in part; (iii) the requests in Defendant Conrad Villegas' Notice of Joinder in Co-Defendant's Opposed Motion for Designation of Evidence by the Government Pursuant to Rule 12(b)(4)(B) (Doc. 1281) and Defendant Rudy Perez's Motion for Production of Alleged Co-Conspirator Statements and for Pre-Trial Hearing on their Admissibility (Doc. 1228), filed October 6, 2017 (Doc. 1293), are granted in part and denied in part; (iv) the requests in the Notice of Joinder by Allen Patterson Pursuant to Rule 16, filed October 13, 2017 (Doc. 1311), are granted in part and denied in part; (v) the requests in Defendant Anthony Ray Baca's Notice of Joinder, filed November 1, 2017 (Doc. 1390), are granted in part and denied in part; and (vi) the requests in Defendant Shauna Gutierrez' Notice of Joinder, filed November 6, 2017 (Doc. 1407), are granted in part and denied in part.  After the Defendants identify for the United States the evidence which they intend to move to suppress, the United States must inform the Defendants whether it intends to introduce the identified evidence in its case-in-chief.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
   Attorney for the United States
      Acting Under Authority Conferred by 28 U.S.C. § 515
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Susan M. Porter
Albuquerque, New Mexico

--and--

Sarah M. Gorman
Albuquerque, New Mexico

   *Attorneys for Defendant Angel DeLeon*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

   *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

     *Attorneys for Defendant Edward Troup*

Russell Dean Clark
Las Cruces, New Mexico

     *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

     *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

     *Attorney for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck Law Firm
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

     *Attorneys for Defendant Allen Patterson*

Eduardo Solis
El Paso, Texas

--and--

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Orlando Mondragon
El Paso, Texas

   *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, Attorney at Law
Denver, Colorado

--and--

Noel Orquiz
Deming, New Mexico

   *Attorneys for Defendant Javier Alonso*

Laura E. Udall
Cooper & Udall Law Offices
Tucson, Arizona

--and--

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

   *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

 *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

--and--

León Encinias
León Felipe Encinias, Attorney at Law
Albuquerque, New Mexico

 *Attorneys for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

 *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

 *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

 *Attorneys for Defendant Mario Rodriguez*

Steven Lorenzo Almanza
Las Cruces, New Mexico

--and--

Ray Velarde
El Paso, Texas

      *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

      *Attorneys for Defendant Mauricio Varela*

Lauren Noriega
The Noriega Law Firm
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

--and--

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

      *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

--and--

Kimberly S. Bruselas-Benavidez
Albuquerque, New Mexico

*Attorneys for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

*Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan Earnest LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli LLP
Albuquerque, New Mexico

*Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
CJM Law Firm
Las Cruces, New Mexico

*Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

*Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Law Office of Ryan J. Villa
Albuquerque, New Mexico

     *Attorneys for Defendant Rudy Perez*

Donavon A. Roberts
Albuquerque, New Mexico

--and--

Lisa Torraco
Albuquerque, New Mexico

     *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson
Albuquerque, New Mexico

     *Attorney for Defendant Santos Gonzalez*

Keith R. Romero
Keith R. Romero, Attorney and Counselor at Law
Albuquerque, New Mexico

     *Attorney for Paul Rivera*

Angela Arellanes
Albuquerque, New Mexico

*Attorney for Defendant Shauna Gutierrez*

Jerry A. Walz
Alfred D. Creecy
Samuel Winder
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant Brandy Rodriguez*